UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Plaintiff,

v.

                                                Civil Case No. 17-11755
                                                Honorable Linda V. Parker

DONALD CLAYTON MILLER and
NATIVIDAD GASTON, as the Personal
Representative of the BONDARYL
MCCALL, JR. ESTATE,

    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16) AND MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT DONALD CLAYTON MILLER (ECF NO. 11)

This is a declaratory judgment action arising from a lawsuit filed against Donald Clayton Miller ("Miller") after he shot and killed Bondaryl McCall, Jr. ("McCall"). The Personal Representative of McCall's Estate (hereafter "Estate") sued Miller for wrongful death. Plaintiff Allstate Property and Casualty Insurance Company ("Allstate") seeks a declaration that it is not liable to defend and indemnify Miller in that lawsuit under a homeowners insurance policy Allstate issued to Miller. Presently before the Court are Allstate's motion for summary judgment (ECF No. 16) and its motion for default judgment as to Miller (ECF No.

11). The Estate filed a response to Allstate's motion for summary judgment; Allstate filed a reply brief. (ECF No. 17, 18.) Miller has not responded to Allstate's Complaint or its motions. Finding the facts and legal arguments sufficiently presented in the parties' briefs, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## Background

Allstate insured Miller under Select Homeowners Policy number 960030400 (hereafter "Policy"). (*See* Pl.'s Mot., Ex. B, ECF No. 16.)

On February 16, 2016, McCall came to Miller's house to pick up McCall's son who was living with Miller and Miller's daughter, who is the child's mother and McCall's ex-girlfriend. When McCall arrived, Miller exited the home armed with a 9 mm handgun and began shooting McCall. Miller fired six shots, striking McCall in the back and the back of his head. McCall died from his gunshot wounds.

As a result of his actions, Miller was charged with second-degree murder and felony firearm in the Circuit Court for Macomb County, Michigan. He claimed self-defense. On November 4, 2016, a jury found Miller guilty of the lesser charge of voluntary manslaughter and guilty of felony firearm. (Pl.'s Mot., Ex. D, ECF No. 16-5 at Pg ID 496.) Miller currently is serving sentences of four years and two months to fifteen years on the voluntary manslaughter conviction

and two years on the felony firearm charge. Miller filed a direct appeal, but the appeal was dismissed by stipulation on August 16, 2017. (*Id*., Ex. F at 5, ECF No. 16-7 at Pg ID 510.)

In the meantime, the Estate filed a wrongful death action against Miller in Macomb County Circuit Court ("underlying lawsuit"). (*See id*., Ex. A, ECF No. 16-2.) Allstate is defending Miller in the underlying lawsuit pursuant to a reservation of rights. The Estate filed a motion for summary disposition with respect to liability in the underlying lawsuit (Def.'s Resp., Ex. 2, ECF No. 17-2), which the state court denied on September 11, 2017. (*Id*, Ex. 3, ECF No. 17-3.)

Allstate filed the current lawsuit on June 2, 2017, seeking a declaration that it has no duty to defend or indemnify Miller in the underlying lawsuit under the Policy. The Estate filed an Answer to Allstate's Complaint on July 20, 2017. (ECF No. 8.) When Miller failed to timely respond to the Complaint, Allstate filed a request for Clerk's Entry of Default on July 21, 2017. (ECF No. 9.) A Clerk's Entry of Default was entered July 24, 2017. (ECF No. 10.)

**Summary Judgment Standard**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient

3

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

**Applicable Law and Analysis**

Allstate argues that it has no duty to defend or indemnify Miller in the underlying lawsuit because the Policy only covers damages arising from an "occurrence" which means "an accident" and, Allstate argues, Miller's act of

4

shooting McCall was not an accident. Alternatively, Allstate argues that coverage is excluded under the Policy's intended or expected acts exclusion. The Estate responds, arguing that the state court's decision denying its motion for summary disposition in the underlying case precludes Allstate's arguments. The Court addresses the Estate's argument first.

Michigan law applies to this action, as subject matter jurisdiction is premised solely on the diversity of the parties. *See Stalbosky v. Beleu*, 205 F.3d 890, 893 (6th Cir. 2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Thus, this Court must apply Michigan law as enunciated by the Michigan Supreme Court. *See, e.g., Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 723 (6th Cir. 2007); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). Where the Michigan Supreme Court has not addressed an issue, the Court may look to the Michigan Court of Appeals' decisions and follow its reasoning unless this Court is "convinced by other persuasive data that the highest court of the state would decide otherwise." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001).

Res judicata or claim preclusion under Michigan law bars a subsequent action when (1) a "'prior earlier action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been resolved in the first.'" *Abbott v. Michigan*, 474 F.3d 324, 330

(6th Cir. 2007) (quoting *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004)). "A party may invoke the doctrine of res judicata only when the previous decree is a *final* decision." *Kosiel v. Arrow Liquors Corp.*, 521 N.W.2d 531, 533 (Mich. 1994) (emphasis in original) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)). "Under Michigan law, 'collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined.'" *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 849 (6th Cir. 2006) (quoting *People v. Gates*, 452 N.W.2d 627, 630 (Mich. 1990)). The requirements are not satisfied to apply either doctrine in the present case.

First, the state court judge has only *denied* the estate's motion for summary disposition. This decree is not a final decision. Presumably the state court only has concluded that there are material issues of fact regarding whether Miller negligently or intentionally killed McCall. Second, the two actions do not involve the same parties or their privies. Allstate is not a party in the underlying action. While it is representing Miller in that lawsuit, Allstate's and Miller's interests are not identical. Miller will be liable to the Estate in the underlying action if he is found to have acted intentionally *or* negligently. Allstate will be obligated to provide coverage under the Policy only if Miller is found to have acted negligently.

6

Stated differently, Allstate has no interest in whether Miller is found to have intentionally caused McCall's death. Finally, the issue of coverage under the Policy is not before the state court. For these reasons, the Estate's preclusion argument fails and the Court will turn to Allstate's arguments regarding coverage under the Policy.

Under Michigan law, a court "must look to the language of the insurance policy and interpret the terms therein in accordance with Michigan's well-established principles of contract construction." *Citizens Ins. Co. v. Pro-Seal Serv. Grp., Inc.*, 730 N.W.2d 682, 685 (Mich. 2007). The Michigan courts recognize that "[a]n insurance policy is much the same as any other contract. It is an agreement between the parties in which a court will determine what the agreement was and effectuate the intent of the parties." *Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433 (Mich. 1992). As such, "[a]n insurance policy must be enforced in accordance with its terms." *Frankenmuth Ins. Co. v. Masters*, 595 N.W.2d 832, 837 (Mich. 1999) (citation omitted). The Michigan Supreme Court has held that "[it] will not hold an insurance company liable for a risk it did not assume." *Id*.

Nevertheless, where the terms of an insurance policy are ambiguous, the policy should be construed in favor of the insured. *Id*. Yet, an ambiguity should not be created where the terms are clear. *Id*. Terms should be construed "in

7

accordance with their 'commonly used meaning.'" *Id.* (quoting *Arco Indus. v. Am. Motorists Ins. Co.*, 531 N.W.2d 168, 172 (1995)).

The Allstate Policy issued to Miller provides, in relevant part:

> **Section II Family Liability and Guest Medical Protection**
>
> **Coverage X**
> **Family Liability Protection**
>
> **Losses We Cover Under Coverage X**:
> Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

(Pl.'s Mot., Ex. B at § II, ECF No. 16-3 at Pg ID 454.) The Policy further provides, in relevant part:

> **Coverage Y**
> **Guest Medical Protection**
>
> **Losses We Cover Under Coverage Y:**
> **We** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance, hospital, licensed nursing and funeral services; and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.
>
> Each person who sustains **bodily injury** is entitled to this protection when that person is:
> 1. on the **insured premises** with the permission of an **insured person**;
>
> * * *

(*Id*. at Pg ID 455.) The Policy defines an "occurrence" as "an accident … resulting in bodily injury or property damage." (*Id.* at Pg ID 436.)

The term "accident" is not defined in the Policy, but the Michigan Supreme Court has held that "'an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Nabozny v. Burkhardt*, 606 N.W.2d 639, 642 (Mich. 2000) (quoting *Masters*, 595 N.W.2d at 838). The Michigan Supreme Court has advised further that "'the definition of accident should be framed from the standpoint of the insured, not the injured party' and that 'the appropriate focus of the term 'accident' must be on both the injury-causing *act* or *event* and its relation to the resulting property damage or personal injury.'" *Id*. (emphasis in *Masters*) (additional citations and quotation marks omitted).

The Policy also excludes coverage for injury "intended by, or which may reasonably be expected to result from the intentional acts or omissions of, any insured person." (Pl.'s Mot., Ex. B at § II.C.1, ECF No. 16-3 at Pg ID 456.) This exclusion is applicable

> even if: a) such **insured person** lacks the mental capacity to govern his or her conduct; b) such **bodily injury** … is of a different kind or degree than intended or reasonably expected; or c) … is sustained by a different person than intended or reasonably expected.

(*Id*.)

This Court concludes that the jury verdict in Miller's criminal case mandates the finding that his shooting of McCall was not an "accident."[1] The verdict also requires this Court to conclude that McCall's injury was "intended by" or was "reasonably … expected to result from [Miller's] intentional or criminal acts." As such, McCall's death resulting from Miller's actions are not covered, or are excluded from coverage, under the Policy.

As indicated, the jury found Miller guilty of voluntary manslaughter. Under Michigan law, voluntary manslaughter is a lesser included offense of murder, "with murder possessing the single additional element of malice." *People v. Mendoza*, 664 N.W.2d 685, 692 (Mich. 2003). As the Michigan Supreme Court provided:

> … both murder and voluntary manslaughter require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great

---

[1] The jury's determination is preclusive as to Miller, the insured. While the Estate, which was not a party to the criminal case, may not be precluded under res judicata or collateral estoppel from re-litigating Miller's intent, it does not present evidence in response to Allstate's motion to create a genuine issue of material fact with respect to this issue. The Estate, in fact, fails to respond to any of the arguments in Allstate's motion and relies solely on its claim that the state court's ruling in the underlying case bars this action. Thus, the Court deems the Estate to be conceding Allstate's arguments. *See Brown v. Gojcaj Foods, Inc.*, No. 09-14537, 2011 WL 1980533, at *3 (E.D. Mich. May 20, 2011) ("If a party fails to respond to an argument raised in a motion the court can assume that opposition to the motion is waived and the motion may be granted.") (citing *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008)); *see also City of Columbus, Ohio v. Hotels.com, L.P.*, 693 F.3d 642, 652 (6th Cir. 2012) ("Generally, an argument not raised before the district court is waived on appeal[.]").

bodily harm with knowledge that death or great bodily harm was the probable result.

*Id.* Thus, the jury found beyond a reasonable doubt that Miller intended to kill or greatly harm McCall. In other words, Miller did not shoot McCall by accident.

For these reasons, the Court holds that the Policy does not cover McCall's injuries resulting from Miller's conduct. Therefore, Allstate is entitled to summary judgment against the Estate. For the same reasons, and because Miller has failed to respond to Allstate's Complaint, Allstate also is entitled to a default judgment against Miller.

Accordingly,

**IT IS ORDERED** that Allstate's motion for summary judgment (ECF No. 16) is **GRANTED**;

**IT IS FURTHER ORDERED** that Allstate's motion for default judgment against Defendant Donald Clayton Miller (ECF No. 11) is **GRANTED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: December 20, 2017

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 20, 2017, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager